DYKEMA *v.* MUSKEGON PISTON RING COMPANY.

1. CORPORATIONS—DIRECTORS—NEGLIGENCE—FRAUD.
   Directors of a corporation are only liable for ordinary negligence, in the absence of fraud.

2. SAME—DIRECTORS—NEGLIGENCE.
   The ordinary neglect for which directors of a corporation must answer is the omission of that care which every man of common prudence takes in regard to his own affairs.

3. SAME—STATEMENTS BY DIRECTORS—FRAUD.
   Plaintiff, who had previously purchased and still owned stock of defendant corporation, failed to make out a case of false representation or fraud by defendant corporation and its directors by reason of their issuance of unambiguous statements relative to proposed merger of the corporation with another corporation, where the stock was thereafter purchased on the open market, not from defendants or with profit to them, and some of it could have been sold without a loss after the statements were made.

4. SAME—STOCKHOLDERS—CREDITORS.
   Stockholders are not "creditors" of the corporation as that word is generally understood.

5. SAME—STATEMENTS OF DIRECTORS—FRAUD.
   Directors' statements as to proposed merger of their corporation with another corporation, as contained in initial letter to plaintiff and subsequent letter enclosing a notice of meeting, proxy statement and copy of contract between the 2 corporations and advice that the Federal department of justice had not yet approved the merger *held,* insufficient to sustain a charge of false representation as to plaintiff who thereupon proceeded to buy additional stock on the open market.

6. SAME—STATEMENTS OF DIRECTORS—STATUTES—FRAUD.
   Whether or not statements by corporation's directors with re-

REFERENCES FOR POINTS IN HEADNOTES
[1] 13 Am Jur, Corporations §§ 985, 1044, 1057 *et seq.*
[2] 13 Am Jur, Corporations §§ 985, 989, 990, 1044 *et seq.*
[4] 13 Am Jur, Corporations §§ 173, 413.
[7] 12 Am Jur, Contracts § 226 *et seq.*

spect to proposed merger contract they had negotiated with another corporation were "statements," "reports," "certificates" or "public notice" in violation of provision of the corporation act imposing liability upon officers and directors for knowingly or wrongfully making false reports is not determined in stockholder's action against them for fraud, where plaintiff has failed to establish a prima facie case that they "knowingly or wrongfully" signed any "false certificate" or "other statement" (CL 1948, § 450.50).

7. CONTRACTS—CONSTRUCTION—UNAMBIGUOUS WRITING.

A question of law is presented for determination by the court in the construction of an unambiguous writing, where the facts are undisputed.

Appeal from Muskegon; Fox (Noel P.), J. Submitted January 17, 1957. (Docket No. 40, Calendar No. 47,027.) Decided April 22, 1957.

Case by T. J. Dykema against Muskegon Piston Ring Company, its officers and directors, for damages sustained by reason of stock purchases in anticipation of proposed merger. Directed verdict for defendants. Plaintiff appeals. Affirmed.

*Alexander, Cholette, Buchanan, Perkins & Conklin (Edward D. Wells,* of counsel), for plaintiff.

*McCobb, Heaney & Dunn,* for defendants.

KELLY, J. Plaintiff sought damages, alleging that defendants falsely and negligently advised him, as a stockholder, that a merger of defendant company and Thompson Products, Inc., would be consummated upon approval of defendant company's stockholders, and that in reliance upon said statement plaintiff purchased 1,200 shares of defendant company stock, thereby sustaining large and substantial losses. At the conclusion of plaintiff's case the trial court directed a verdict of no cause of action, and plaintiff appeals.

Plaintiff bases his claim on defendants' letter of August 27, 1951, which read:

*"To Stockholders:*

"The management of your company has been carefully studying a proposal under which Thompson Products, Inc., of Cleveland, Ohio would acquire all of the assets and assume all of the liabilities of your company by means of an exchange of stock. Under this proposal the assets and business of the 2 companies would be combined and stockholders of Muskegon would become stockholders of Thompson Products.

"Today, with the unanimous approval of your board of directors, your officers signed a contract with Thompson Products under which this proposal would be carried out on a basis of the exchange of 1 share of Thompson Products common stock for 2-1/2 shares of Muskegon common stock. Thompson Products common stock is listed on the New York and Midwest stock exchanges.

"This contract and the completion of the proposal are subject to the approval of Muskegon's stockholders. A special meeting will be called and held as soon as the necessary arrangements can be made. In connection therewith you will receive a proxy statement setting forth the details of the proposal.

"We regret that the time required for postal delivery of this letter will prevent your receiving it at the same time as this information was given to the stock exchanges on which Muskegon shares are listed.

"Very truly yours,
"MUSKEGON PISTON RING COMPANY,
"T. E. McFALL, President,
"by order of the Board of Directors."

After receiving this letter plaintiff consulted with his bookkeeper and auditor, and then instructed his broker to purchase 1,200 shares of stock. The broker proceeded to fill the order as follows:

500 shares at 16 1/4 on August 29, 1951
100 shares at 16 on August 31, 1951
200 shares at 17 1/8 on October 8, 1951
200 shares at 16 7/8 on October 9, 1951
100 shares at 16 3/8 on October 22, 1951
100 shares at 12 1/8 on October 24, 1951.

On September 24, 1951, plaintiff received defendants' letter dated September 20th, enclosing a notice of meeting, a proxy statement and copy of the contract between Muskegon Piston Ring Company and Thompson Products, Inc., which contract contained the following information:

"On August 27, 1951, the department of justice was advised orally and by written statement concerning the plan and the effect of its consummation on the piston ring industry, and, pursuant to requests from the department, supplemental statements have been or are being filed. At the date of this proxy statement the department of justice has not indicated its attitude toward the plan."

Plaintiff admits receiving the letter and states that he only glanced at the proxy statement contained therein. After receiving the letter he purchased 600 additional shares of stock, said purchase dates being October 8th, 9th, 22d and 24th.

On November 28, 1951, plaintiff and other stockholders were advised by defendants that a letter had been received from the department of justice that the merger plan "might result in a situation inconsistent with anti-trust laws," and that:

"Your board and the directors of Thompson Products, Inc., have had the views of the department of justice under consideration since the receipt of the department's letter. Discussion with representatives of the department have been held and further discussions are contemplated, to explore what, if any, further steps might be taken to meet the ob-

jections of the department. It is not expected that
a definite decision will be reached respecting con-
summation of the plan until the outcome of these
discussions has been considered.  *  *  *  When
a definite decision has been reached, stockholders
will be notified."

On January 3, 1952, plaintiff received defendants'
letter advising that at the adjourned meeting of
December 19, 1951, it was reported that the officers
were continuing their investigation and study but
that little encouraging progress had been made and
that the meeting was adjourned to April 15, 1952.

On April 3, 1952, plaintiff was informed that
Thompson Products had notified defendants of the
termination of the plan because of the threat of liti-
gation and that Thompson was withdrawing the
merger plan.

Appellant requests this Court to determine his
rights to recovery, first, on the grounds of negligence
or misrepresentation and, if not successful on these
grounds, to then consider the statutory liability of
the defendants. We shall follow this procedure of
approach in this opinion.

Plaintiff's case is based upon his statement that
he "considered the letter (of August 27, 1951) an
inducement for me to purchase more Muskegon
Piston Ring."

There is nothing ambiguous about defendants'
letter of August 27th. It clearly advised stock-
holders that, after a careful study and approval of
the board of directors, the officers of defendant cor-
poration entered into a contract with the Thompson
Products for the exchange of 1 share of Thompson
Products for 2-1/2 shares of Muskegon Piston Ring
Company stock. This letter clearly set forth that
the contract was not consummated by such action
but that the "contract and the completion of the
proposal" would require the approval of the stock-

holders, and that "the details of the proposal" would be sent to the stockholders in the form of a proxy statement. This letter advised, or cautioned, stockholders that both Thompson Products stock and defendant company stock were listed on the exchanges and that the letter stockholders were receiving was not personal or confidential because at the same time they were receiving the information, the same information would be in the possession of the exchanges on which defendants' shares were listed.

Plaintiff does not contend, nor did he prove (1) that this letter was an offer to sell stock; (2) that it purported to be a letter discussing the merits of the contract between Muskegon Piston and Thompson Products; (3) that it was a letter written for the purpose of deceiving and defrauding plaintiff and other stockholders; (4) that the contract entered into was not for the best interest of the stockholders; and (5) that the defendants sent said letter to influence plaintiff's conduct.

Plaintiff did not become a stockholder because of this letter. He testified that he started to buy Muskegon Piston stock in 1939 and that between then and the receipt of the letter of August 27th he had purchased 1,200 shares and "never sold any of the stock, just bought it and held it." Previous to the letter of August 27, 1951, plaintiff had requested and received information from defendant corporation in regard to financial questions relating to his ownership of stock.

Plaintiff does not contend that the letter and proxy statement of September 20, 1951, did not fully advise him in regard to all facts connected with the proposed merger, including the fact that said merger might not be consummated because of the justice department's refusal to approve such merger.

When plaintiff received this proxy statement, he had purchased 600 shares of stock subsequent to

receiving the August 27th letter, namely, on August 29th and August 31st. Plaintiff does not deny that for 30 days after receipt of the proxy statement he could have sold the 600 shares of stock without suffering any loss. Instead of selling, he purchased 600 additional shares. By such action the trial court held that plaintiff was guilty of contributory negligence, stating:

"Even if the statement were false, and even if the plaintiff had met his burden of proof in all other particulars, his case should fall. He purchased 600 shares of stock between August 29, 1951, and September 24, 1951. On the latter date, he received full information 'including reference, orally and in writing, of the proposed merger, to the justice department.' After September 24, 1951, and through October 15, 1951, plaintiff could have sold his stock at a profit, yet he continued to purchase 600 additional shares on the open market. This conclusively establishes that plaintiff was not relying on any information received from Muskegon, but, however, after receiving complete information, he was using his own judgment and relying upon the advice and counsel of his bookkeeper, his auditors and his broker.

"He cannot predicate his action in purchasing the 600 additional shares of stock from October 8, 1951, to October 24, 1951, on incomplete information. He had the proxy statement. He makes no claim of inaccuracy, falsity or omission in that statement. He did not act prudently to protect his own interest after he knew, or should have known, all the facts.

"Plaintiff has failed to prove freedom from contributory negligence. The letter distinctly advised plaintiff, 'You will receive a proxy statement setting forth the details of the proposal.' Plaintiff read this letter. It told him the proxy statement contained the details of the proposal. He knew, or should have known, the letter was incomplete as to conditions. When he received the proxy statement, he claims he just glanced at it, but did not read the

information supplied. Plaintiff, of his own volition, in the hope of making a speculative profit, purchased stock on August 27, 1951, and thereafter, through September 24, 1951. After receipt of the letter, plaintiff did not have to take action to protect himself from damages by the purchase of stock. Plaintiff's action, as a matter of law, prevents recovery. He is guilty of negligence in his failure to provide for his own interests."

In the absence of fraud, directors are only liable for ordinary negligence. In *Martin* v. *Hardy,* 251 Mich 413, this Court held that the general rule by which to measure the degree of care and diligence required of directors of a corporation is that they must answer for ordinary neglect, and that "ordinary neglect" is understood to be omission of that care which every man of common prudence takes in regard to his own affairs.

Plaintiff has not sustained a charge of false misrepresentation or fraud. The stock which plaintiff bought was not purchased from defendants, but on the open market. Defendants in no way profited by plaintiff's purchase of the stock.

This Court in *Rosenberg* v. *Cyrowski,* 227 Mich 508, held that representations made by one party to another in a transaction between them, which are false in fact and actually deceive the other are actionable, irrespective of whether the person making them knew them to be false or acted in good faith in making them, when the loss of the party deceived inured to the benefit of the other, but when the person making the representations is not a party to the transaction, and in no way profits by the act of the party defrauded in reliance on the representations made by him, he is liable for damage only in case he knows the representations made by him to be false, and makes them for the purpose of deception and with the intent that they shall be relied on and acted

on by the person to whom they are made, and loss or damage results therefrom.

We do not agree with plaintiff's claim that *Wettlaufer Manufacturing Corporation* v. *Detroit Bank,* 324 Mich 684, eliminates the principle set forth above in the *Rosenberg Case.* In the *Wettlaufer Case* there existed a debtor-creditor relationship. Stockholders are not "creditors" of the corporation as that word is generally understood. *Polish American Publishing Co.* v. *Wojcik,* 280 Mich 466; *Curtiss* v. *Wilmarth,* 254 Mich 242; *Leland* v. *Ford,* 245 Mich 599.

Plaintiff failed to prove that defendants prepared a false or fraudulent statement and forwarded same to plaintiff.

We cannot agree with appellant that defendant officers and directors violated section 50 of the Michigan corporation code (CL 1948, § 450.50 [Stat Ann § 21.50]). This section of the code, applicable to the present case, can be set forth as follows: That officers and directors of a corporation are jointly and personally liable for "knowingly or wrongfully authorizing, signing and/or making such false report, certificate, other statement or notice." Appellant sets forth dictionary definitions of the words "report," "statement" and "public notice," and quotes from *Commercial Bank of Menominee* v. *Weidman,* 301 Mich 405, to the effect that this statute is remedial in nature and that a defendant director or officer is liable for a fraudulent or wrongful statement or action even though he has not thereby profited.

It is appellees' position that the letter of August 27, 1951, is not a "statement," "report," "certificate," or "public notice," as intended by the legislature under section 50, and that the words "report" and "certificate" are specific terms and the word "statement" is a general word; that general and specific words in a statute which are associated together and which

are capable of an analogous meaning take color from each other so that the general words are restricted to a sense analogous to the less general.

It is not necessary in this opinion to decide whether this letter in question was the type of "statement" contemplated by our legislature in the enactment of section 50 of the general corporation code, because plaintiff has failed to establish a prima facie case that defendants "knowingly or wrongfully" signed any false "certificate" or "other statement."

There is no dispute about any of the facts in this case. There is no claim that any of the documents introduced were ambiguous. The only question presented is whether plaintiff had the right to construe the letter of August 27, 1951, as he claimed he construed it before purchasing the stock.

Under these conditions we cannot agree with plaintiff's contention that the trial court should have submitted the case to the jury. This Court has held that where the language of a writing is not ambiguous its construction is for the court and, further, that a question of law is presented when the facts are undisputed. See *Griffin Manufacturing Co.* v. *Mitshkun,* 233 Mich 640; *Wight* v. *H. G. Christman Co.,* 244 Mich 208.

Judgment affirmed. Costs to appellees.

Dethmers, C. J., and Sharpe, Smith, Edwards, Voelker, Carr, and Black, JJ., concurred.