DETROIT GRAY IRON & STEEL FOUNDRIES, INC., v. MARTIN.

1. CORPORATIONS—OFFICERS—DIRECTORS—IMPROPER CONDUCT—LIMITATION OF ACTIONS.

Cause of action by corporation against defendants for accounting, cancellation of stock, and damages, based upon alleged improper action of its former directors and officers in that they enriched themselves by fraudulently diverting to themselves the corporation's business opportunities and using its plant, equipment, facilities, funds, and personnel, was barred by failure to commence suit within 6 years of time the directors are claimed to have acted contrary to the corporation act or within 2 years from the date of its discovery (CL 1948, § 450.47).

2. SAME—DIRECTOR—BREACH OF FIDUCIARY DUTY—LIMITATION OF ACTIONS.

A corporation that is defrauded or otherwise injured by a director who owes fiduciary duties to his corporate victim must sue within 2 years of its discovery of the wrong or at least within 6 years of its occurrence or forever bear the loss (CL 1948, § 450.47).

3. LIMITATION OF ACTIONS—CORPORATIONS—DIRECTORS—STATUTES.

The limitation of the general corporation act upon an action by a corporation against its director for conduct below the stat-

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 13 Am Jur, Corporations §§ 1020, 1021.
Statute of limitations in stockholder's derivative suit against directors or officers. 123 ALR 346.

utory standard in requiring that it must be commenced within 2 years from time of discovery or 6 years from date of the delinquency, whichever is sooner, alters the periods of limitations which would otherwise apply to actions against directors either for negligent conduct or fraud (CL 1948, § 450.47; CLS 1956, §§ 609.13, 609.20).

4. SAME—CORPORATIONS—ACTION AGAINST OFFICERS.

Action based on alleged improper conduct of officers and directors whereby they enriched themselves by fraudulently diverting to themselves the corporation's business opportunities and using its plant, equipment, facilities, funds, and personnel, was barred, where action was commenced more than 6 years after the alleged improper action took place (CL 1948, § 450.47).

Appeal from Wayne; O'Hara (Chester P.), J. Submitted June 7, 1960. (Docket No. 5, Calendar No. 48,492.) Decided January 9, 1961.

Bill by Detroit Gray Iron & Steel Foundries, Inc., a Michigan corporation, against Hugh Martin, subsequently deceased, and continued on appeal against Hugh Martin, Jr., executor of estate, Hugh Martin, Jr., individually and with the Detroit Bank & Trust Company as cotrustees under the will of Louis W. Schimmel, deceased, Howard Colby, Bernard P. Costello, and others for accounting, cancellation of stock holdings and damages, as result of misuse of corporate assets. Bill dismissed on motion. Plaintiff appeals. Affirmed.

*Weiner & Grayson (Fred R. Walker, of counsel), for plaintiff.*

*Barbier, MacFarlane & Tolleson,* for defendants Martin, individually and in his fiduciary capacities, the Detroit Bank & Trust Company, and others.

*Chris M. Youngjohn,* for defendant Colby.

*Arthur F. Barkey,* for defendant Costello.

KELLY, J. Plaintiff was engaged in the manufacturing of gray iron castings for the automotive industry, and on February 6, 1929, certain of plaintiff's officers and directors formed the Detroit Alloy Steel Company to manufacture steel castings. The Detroit Alloy Steel Company leased a portion of plaintiff's premises at a monthly rental of $500.

In 1942 plaintiff sought a loan from the Reconstruction Finance Corporation and was informed, as a condition to obtaining the loan, plaintiff would have to acquire the assets of the Detroit Alloy Steel Company. Plaintiff complied by acquiring all of the issued and outstanding shares of capital stock of Detroit Alloy Steel Company on December 31, 1942.

Approximately 16 years later (September, 1958) plaintiff filed its bill of complaint in the circuit court of Wayne county seeking an accounting, cancellation of certain shares of stock, and damages.

Defendants and appellees filed motions to dismiss, and, after oral argument, plaintiff, on December 1, 1958, was given the right to file an amended bill of complaint. Plaintiff filed such amended bill of complaint on December 31, 1958, and, also, an amendment to this amended bill was filed on July 2, 1959.

Plaintiff in its final argument and brief abandoned the so-called directors' statute (CL 1948, § 450.47 [Stat Ann 1959 Cum Supp § 21.47]) and based its action upon common-law fraud and conspiracy.

The bill of complaint was dismissed by a decree entered by Hon. Chester P. O'Hara, circuit judge, on October 12, 1959. Claim of appeal was duly filed by plaintiff.

Section 47 of the Michigan general corporation act (CL 1948, § 450.47 [Stat Ann 1959 Cum Supp § 21.47]) reads:

"The directors of every corporation, and each of them, in the management of the business, affairs, and property of the corporation, and in the selection, supervision and control of its committees and of the officers and agents of the corporation, shall give the attention and exercise the vigilance, diligence, care and skill, that prudent men use in like or similar circumstances.

"Action may be brought by the corporation, through or by a director, officer, or shareholder, or a creditor, or receiver or trustee in bankruptcy, or by the attorney general of the State, on behalf of the corporation against 1 or more of the delinquent directors, officers, or agents for the violation of, or failure to perform, the duties above prescribed or any duties prescribed by this act, whereby the corporation has been or will be injured or damaged, or its property lost, or wasted, or transferred to 1 or more of them, or to enjoin a proposed, or set aside a completed, unlawful transfer of the corporate property to one knowing the purpose thereof. The foregoing shall in no way preclude or affect any action any individual shareholder or creditor or other person may have against any director, officer, or agent for any violation of any duty owed by them or any of them to such shareholder, creditor, or other person. No director or directors shall be held liable for any delinquency under this section after 6 years from the date of such delinquency, or after 2 years from the time when such delinquency is discovered by one complaining thereof, whichever shall sooner occur."

The record in this appeal sustains the trial court's carefully prepared opinion, which reads in part as follows:

"Plaintiff's cause of action is based upon an alleged conspiracy entered into by Messrs. Hugh Martin, Louis W. Schimmel, Harry H. Wyatt, Charles Erdman and Matthew Finn about February 6, 1929, and claims that they, as the then directors

of plaintiff, caused to be formed another corpora-
tion known as Detroit Alloy Steel Company, where-
in they were the sole stockholders and directors;
and having formed this corporation, they entered
into a lease between plaintiff and the new corpora-
tion, wherein the latter leased all of the facilities,
plant, equipment, et cetera, of plaintiff for the
manufacture of steel castings for the sum of $500
per month. At that time plaintiff was making only
gray iron castings. This lease was renewed from
time to time until 1942. Plaintiff claims that this
amount of money was inadequate consideration for
that which was leased and used by the lessee, and
that an adequate rental would have been a sum be-
tween $15,000 and $25,000 per year or more. No
claim is made of any contract with any of these indi-
vidual directors, but they did control both corpora-
tions during this period of time. No misrepresenta-
tions are alleged in the bill, and the only basis for this
action is the alleged use of these facilities, et cetera,
without paying adequate consideration therefor. * * *

"It is interesting to note that plaintiff alleges in
paragraphs 10 through 14 that a merger occurred
between this plaintiff and Detroit Alloy Steel Com-
pany as a result of the insistence of the Reconstruc-
tion Finance Corporation that a merger be perfected
as a condition for a governmental loan. Since the
date of that merger in 1942 there has been only 1
corporation. Plaintiff's claims that these defendants
and others conspired in perfecting this merger is
not borne out by its own allegations, and under the
law of Michigan, as found in CL 1948, § 450.52 (Stat
Ann § 21.52), where there is a consolidation or
merger of corporations, the entire agreement must
be submitted to and approved by the shareholders
of each corporation involved and 2/3 of the out-
standing capital stock must approve the adoption of
the agreement. It necessarily follows that the ex-
change of stock on the basis of 1-1/4 shares of plain-
tiff's capital stock for 1 share of Detroit Alloy
Steel Company's stock was known to all the stock-

holders and was approved by them, and shortly thereafter, in 1942, this stock was issued. Nobody complained, no action was taken, and nothing was done at all from 1929 until this case was started in September, 1958.

"Of the original alleged conspirators only 1 is a defendant herein, namely, Hugh Martin.* Apparently Howard Colby acted as attorney in the formation of the new corporation, and shortly after the incorporation thereof, he became a stockholder therein. Charles Erdman is not a defendant, and it was stated on the argument that he has made his peace with the plaintiff. Messrs. Schimmel, Wyatt and Finn are dead. Mr. Schimmel died in 1933, Mr. Wyatt died in 1934, and Mr. Finn died in 1932. The estates of all 3 have been closed for many years, and, of course, no claim was presented against the estate of any of them. Mr. Schimmel created a trust of which Hugh Martin, Jr., and The Detroit Bank & Trust Company are the present trustees. It is claimed that he received 28,000 shares of the new corporation, which went into this trust, and which were exchanged for 35,000 shares of plaintiff at the time of the merger. Under this trust, Clara Martin has a life interest, and Hugh Martin, Jr., and Lois Martin Pioch are the remaindermen. The only interest of these various defendants arises out of this trust, which came into being at his death in 1933. Neither Hugh Martin, Jr., nor the bank, nor those named in the trust, ever took any part in any of the proceedings complained of except in the active exchange of stock. The defendant Costello happened to be a law partner of Howard Colby, and based upon that fact, plaintiff surmises and guesses that maybe he was a shareholder through the stock holding of his partner, Howard Colby. The allegation is on information and belief only. George Gibbs and Fred O'Donnell were never served, and Arthur Pfleiderer has been dismissed on stipulation.

---

* This defendant died after the appeal was taken. See statement of case, *ante*, 206.—REPORTER.

"Plaintiff definitely alleges in paragraph 4, as amended, that this lease originally and as renewed from time to time was made with Detroit Alloy Steel Company, and that corporation used the leased premises and property. Throughout the bill, as amended, plaintiff refers to these original incorporators as promoters of that company and as stockholders and directors thereof, and also makes constant reference to them and other defendants as directors of plaintiff, refers to the dual capacities occupied by the alleged conspirators, and sets up no facts, but only a couple of conclusions of the pleader which disclose any individual or combined act of these parties which constitute fraud either actual or constructive, except as it pertains to the allegations in connection with, and arising from, what they did as directors of plaintiff. Practically every paragraph makes reference to their actions as directors of plaintiff and/or directors of the new company.  *  *  *

"In view of those assertions of plaintiff as to its position, this court is constrained to hold with the defendants that this bill of complaint does not set forth any cause of action against these defendants. Certainly, they had a perfect right to form another corporation and to operate it.  *  *  *  Only their actions as directors of the plaintiff are open to question, if anything, and that brings them squarely within the general corporation act [section 47]."

This Court agrees with the trial court that if defendants are liable to plaintiff the action would have to be based upon CL 1948, § 450.47 (Stat Ann 1959 Cum Supp § 21.47). Under this section plaintiff would be barred within 6 years after 1942.*

A charge of conspiracy is not of itself sufficient. Facts must be alleged which constitute an agreement to accomplish an unlawful end, or a lawful end by unlawful means. *People* v. *Tenerowicz,* 266 Mich 276; *MacGriff* v. *Van Antwerp,* 327 Mich 200.

---

* See CLS 1956, § 609.13 (Stat Ann 1959 Cum Supp § 27.605).— REPORTER.

There were no facts set forth in plaintiff's bill of complaint meeting this test.

The concealment statute (CLS 1956, § 609.20 [Stat Ann 1959 Cum Supp § 27.612]) is not applicable, and the trial court properly stated:

"Our Court has held that fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action; further, that the acts relied upon must be of an affirmative character and fraudulent. *De Haan v. Winter,* 258 Mich 293; *Buchanan v. Kull,* 323 Mich 381; *Draws v. Levin,* 332 Mich 447; *International Union UAW-AFL v. Wood,* 337 Mich 8.

"There is nothing to show that the people interested in this corporation didn't know of this entire situation, at least at the time of the merger in 1942, and, of course, the entire matter was well known to the directors of plaintiff at all times from 1929 on. Under CL 1948, § 450.47 (Stat Ann 1959 Cum Supp § 21.47) express authority is given to shareholders, creditors, and many others to bring the action. Nobody saw fit to bring any action until a lapse of some 29 years after the first lease and a lapse of 16 years after the merger of 2 companies. The fact that possibly those who are now in the active management of this corporation didn't know about this situation is of no consequence."

A valid contract can exist in this State between corporations having common directors, as is disclosed by CLS 1956, § 450.13, paragraph 5 (Stat Ann 1959 Cum Supp § 21.13), which provides that no contract of any corporation made with any director of such corporation or with any other group or association of which such director shall be a member or with any other corporation of which the director may be a member or director and no contract between corporations having common directors

shall be invalid because of such respective facts alone.

In *Goodspeed* v. *Goodspeed*, 273 Mich 87, 89, 90, our Court construed the directors' statute above referred to, and stated:

"This statute considers directors as fiduciaries and trustees 'in the management of the business, affairs, and property of the corporation, and in the selection, supervision and control of its committees and of the officers and agents of the corporation,' and its purpose is to prevent sleeping on known rights, awaiting an accumulation of acts of mismanagement over a period of many years and of then asking the court to review and readjust the corporate affairs. * * *

"The statute merely puts in concrete form the doctrine of laches."

The decree of the lower court dismissing the amended bill of complaint is affirmed. Costs to appellees.

Dethmers, C. J., and Carr, J., concurred with Kelly, J.

Souris, J. (*concurring*). The principal question presented by this case is: May a corporation sue a former director to recover profits made by him at the corporation's expense by acts which constitute fraudulent conduct against the corporation after the expiration of the periods of limitation provided for in section 47 of the Michigan general corporation act?*

Detroit Gray Iron & Steel Foundries, Inc., plaintiff herein, contends that section 47 applies only to suits seeking to enforce a director's fiduciary obligations allegedly set forth in the section and that it does not apply to bar suits having for their purpose

---

* CL 1948, § 450.47 (Stat Ann 1959 Cum Supp § 21.47).

enforcement of common-law rights against defendants who happen also to be directors. The latter suits, plaintiff contends, are subject to the general 6-year statute of limitations* and the statute† extending the period of limitations up to 2 years in the case of fraudulent concealment.

We are told by defendants, in effect, that a director can enrich himself by fraudulently diverting to himself his corporation's business opportunities and using its plant, equipment, facilities, funds, and personnel, and be free from any liability to the corporation therefor if he can manage to keep control of the corporation so that it cannot sue him for at least 6 years after the plunder. We are told that this is the meaning of section 47 of the Michigan general corporation act, which provides:

"Sec. 47. The directors of every corporation, and each of them, in the management of the business, affairs, and property of the corporation, and in the selection, supervision and control of its committees and of the officers and agents of the corporation, shall give the attention and exercise the vigilance, diligence, care and skill, that prudent men use in like or similar circumstances.

"Action may be brought by the corporation, through or by a director, officer, or shareholder, or a creditor, or receiver or trustee in bankruptcy, or by the attorney general of the State, on behalf of the corporation against 1 or more of the delinquent directors, officers, or agents, for the violation of, or failure to perform, the duties above prescribed or any duties prescribed by this act, whereby the corporation has been or will be injured or damaged, or its property lost, or wasted, or transferred to 1 or more of them, or to enjoin a proposed, or set aside a completed, unlawful transfer of the corporate property to one knowing the purpose thereof. The

---

* CLS 1956, 609.13 (Stat Ann 1959 Cum Supp § 27.605).
† CLS 1956, 609.20 (Stat Ann 1959 Cum Supp § 27.612).

foregoing shall in no way preclude or affect any action any individual shareholder or creditor or other person may have against any director, officer, or agent for any violation of any duty owed by them or any of them to such shareholder, creditor, or other person. No director or directors shall be held liable for any delinquency under this section after 6 years from the date of such delinquency, or after 2 years from the time when such delinquency is discovered by one complaining thereof, whichever shall sooner occur."

Plaintiff contends that section 47 applies only to negligent or careless failure on the part of a director to give "the attention and exercise the vigilance, diligence, care and skill, that prudent men use in like or similar circumstances." Plaintiff concludes from the use of such language that it establishes "liability for 'ordinary neglect' not fraud where the despoiling of the corporation is deliberate and intentional," citing *Dykema* v. *Muskegon Piston Ring Company,* 348 Mich 129. This Court's opinion in *Dykema* relied upon its earlier opinion in *Martin* v. *Hardy,* 251 Mich 413, in which the Court quoted 2 Thompson on Corporations (3d ed), § 1376, and 1 Morawetz on Private Corporation (2d ed), § 552, in determining the general rule by which "to measure the degree of care and diligence required of directors of a corporation." Neither *Dykema* nor *Martin* hold that section 47 was limited only to negligent acts of directors, as distinguished from intentionally tortious or fraudulent conduct by them. Indeed, *Martin* was decided 1 year before passage of the present Michigan general corporation act.

*Hicks* v. *Steel,* 142 Mich 292 (4 LRA NS 279), is offered by plaintiff in support of its claim that a director may be sued by his corporation in a capacity distinct from his capacity, and not involving his duties as, a director. With this contention there

can be no dispute. In *Hicks,* the defendant was a bank director who was charged with violation of a specific statutory duty relating to the extension of credit (to his father) in excess of the legal limit fixed by the applicable banking law. The proofs showed that defendant made false representations to fellow directors to induce them to discount and renew various notes belonging to his father. The trial court and this Court held he acted as a representative of his father, not as a director, with reference to the transactions there involved and, therefore, suit based upon an alleged breach of a statutory fiduciary duty would not lie. The Court's opinion suggested that under a broader declaration a cause of action might be established by the facts disclosed and it is upon this suggestion plaintiff in the case at bar relies. The distinction between the facts in *Hicks* and those here involved is that in *Hicks* the defendant did nothing as a director to accomplish his unlawful act (he could have made the same misrepresentations as a stranger to the bank), whereas the defendants in the case at bar, it is alleged by plaintiff's amended bill of complaint, used their offices as directors and exercised their powers as directors to accomplish their self-aggrandizement of the plaintiff corporation's expense.

One other Michigan case is relied upon by plaintiff in support of its contention on the issue under consideration. In *Koppitz-Melchers, Inc.,* v. *Koppitz,* 315 Mich 582, a promotor of a corporation, who later became a director, was sued by the corporation for frauds committed by him as a promoter. The Court held section 47 not applicable because defendant was being sued for frauds committed before he became a director. This case offers no support for plaintiff's theory that section 47 does not apply to suits by a corporation against its directors for mis-

conduct involving the performance of their duties as directors.

The difficulty with plaintiff's theory is that plaintiff assumes that the first paragraph of section 47 creates a statutory cause of action for damages arising from a director's "ordinary negligence," as distinguished from what plaintiff would describe as a common-law right of action to redress loss caused by a director's deliberate and intentional fraud. In this plaintiff is mistaken.

Section 47 prescribes the standard by which a director's performance of his duties is to be measured. It puts in statutory language what this Court, quoting Thompson and Morawetz, said in *Martin* v. *Hardy, supra*. This is the standard. Conduct below this standard, whether negligent or wilful, subjects a director to liability no greater than nor any less than he risked before enactment of the statutory provision. The concluding language of section 47 limiting actions against directors for conduct below the standard specified to 6 years from the date of delinquency or 2 years from the time of its discovery, "whichever shall sooner occur," radically alters the periods of limitations which would otherwise apply to actions against directors either for negligent conduct or fraud. CLS 1956, § 609.13 (Stat Ann 1959 Cum Supp § 27.605), and CLS 1956, § 609.20 (Stat Ann 1959 Cum Supp § 27.612).

The legislature's purpose in so doing is not clear. Perhaps it believed that qualified directors for Michigan corporations could not be found unless they could be assured that their conduct of their corporations' affairs could not be challenged after 2 years following disclosure to interested parties or, in any event, after 6 years from occurrence. Plaintiff quite correctly notes that the result is that a corporation defrauded or otherwise injured by a director, who owes fiduciary duties to his cor-

porate victim, must sue within 2 years of its discovery of the wrong or within 6 years of its occurrence, whichever sooner occurs, or forever bear the loss. But, if the corporation is defrauded or otherwise injured by a stranger, it may sue within 2 years after discovery of the wrong regardless when it occurred. Unless our proffered explanation of the legislature's purpose is correct, another anomaly of the law here exists, but it is an anomaly created by the legislature which this Court is powerless to correct.

The chancellor dismissed plaintiff's amended bill of complaint on defendants' motions filed prior to answer. Order of dismissal affirmed. Costs to appellees.

SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred with SOURIS, J.