Catherine Wilson NOLEN, on behalf of herself and all other stockholders of the Shaw-Walker Company, Plaintiff-Appellant,

v.

The SHAW–WALKER COMPANY et al., Defendants-Appellees.

No. 20963.

United States Court of Appeals, Sixth Circuit.

Oct. 12, 1971.

Nathan B. Driggers, Detroit, Mich., for plaintiff-appellant; Cross, Wrock, Miller & Vieson, Andrew A. Paterson, Jr., Sanford Tannenbaum, Detroit, Mich., on brief.

Harold M. Street, Muskegon, Mich., Nathan B. Goodnow, Detroit, Mich., Edward C. McCobb, Grand Rapids, Mich., for defendants-appellees; Dykema, Gossett, Spencer, Goodnow & Trigg, Robert V. Seymour, Detroit, Mich., on brief for Shaw-Walker; Poppen, Street, Sorenson & Engle, Muskegon, Mich., on brief for Guy M. Harrington, A. B. Nevins, R. C. Boyd and C. S. Munson, Jr.; Landman, Hathaway, Latimer, Clink & Robb, M. L. Bradbury, Jr., Muskegon, Mich., on brief for Muskegon Bank and Trust Co.; Dahlberg, Mallender & Gawne, J. Donald McLeod, Detroit, Mich., on brief for John I. Shaw; McCobb, Heaney & Van't Hof, Brian R. Heaney, Grand Rapids, Mich., on brief for The Shaw-Walker Co.

Before PHILLIPS, Chief Judge, and WEICK and McCREE, Circuit Judges.

McCREE, Circuit Judge.

We consider an appeal from the dismissal of substantially all of an eight-count complaint charging the improper accumulation of earnings by the Shaw-Walker Company for the years 1954 through 1967. A related case concerning this company has twice been before this court. In 1965, the Tax Court of the United States sustained a $1,-580,366.50 penalty tax asserted against the corporation under §§ 531 et seq. of

the Internal Revenue Code of 1954, as amended, 26 U.S.C. § 531 et seq., for excessive accumulations of earnings during the Company's taxable years ended June 30, 1955, 1956, and 1957, and $846,642.-00 interest on that amount. The Shaw-Walker Co. v. Commissioner, 25 T.C.M. 1709 (1965). This court vacated the Tax Court decision and remanded that case to the Tax Court in an opinion, Shaw-Walker Co. v. Commissioner of Internal Revenue, reported at 390 F.2d 205 (6 Cir. 1968). Thereafter, the Supreme Court vacated our judgment and remanded the case to this court for reconsideration in light of its decision in United States v. Donruss Co., 393 U.S. 297, 89 S.Ct. 501, 21 L.Ed.2d 495 (1969). Commissioner v. Shaw-Walker Co., 393 U.S. 478, 89 S.Ct. 707, 21 L.Ed.2d 687 (1969). Upon reconsideration, we again vacated the Tax Court's 1965 decision and remanded the case to the Tax Court for further consideration. Shaw-Walker Co. v. Commissioner of Internal Revenue, 412 F.2d 858 (6 Cir. 1969).

On October 21, 1966, the original complaint in this case was filed in the District Court by Catherine Nolen, asserting in her own behalf as a minority shareholder and on behalf of other shareholders similarly situated, as a class, an action against the controlling shareholders. She also asserted a derivative action on behalf of the corporation against seven of its directors. The individual and class action counts seek recovery of damages suffered by the minority shareholders because of the excessive accumulation of earnings and the wrongful failure to declare dividends by the dominant shareholders who control this closely held corporation. The derivative counts seek recovery for the corporation of the penalty taxes and interest from the directors who are charged with having excessively accumulated earnings to avoid personal income taxes for which they would have been liable if dividends had been paid to them as shareholders. The individual defendants were, at relevant times, either officers or directors of the Company or both officers and directors.

On January 23, 1969, the District Court issued an opinion holding that the applicable statutes of limitation barred appellant's derivative action to the extent that it was based upon alleged acts prior to September 15, 1961, and barred appellant's individual and class actions to the extent that they were based upon alleged acts prior to September 15, 1964.[1] Thereafter, pursuant to an order of the court, all the Company's shareholders were sent copies of the amended complaint and answers thereto and two forms which they were asked to complete and return to indicate whether they wished to be excluded from the class Nolen sought to represent and to state whether they believed that she would fairly and adequately represent their interests in the derivative action. Seventy-nine of the Company's 84 shareholders, who together owned approximately 96% of the outstanding stock, indicated that they did not wish to be represented by Nolen in the class action and that they did not believe Nolen would fairly and adequately represent their interests in the derivative action.

1. The statute, part of the Michigan General Corporation Act, applicable to the derivative action provides, in pertinent part:

"* * * No director or directors shall be held liable for any delinquency under this section after 6 years from the date of such delinquency, or after 2 years from the time when such delinquency is discovered by one complaining thereof, whichever shall sooner occur." M. C.L.A. § 450.47.

The court below held that the general Michigan statutes of limitation applied to the individual and class actions in which the defendants were sued *qua* shareholders and not *qua* directors, and that those actions were therefore barred three years after September 15 of the years involved. September 15 is the applicable date because of the provision of 26 U.S.C. § 563 (a) that

"* * * a dividend paid after the close of any taxable year and on or before the 15th day of the third month following the close of such taxable year shall be considered as paid during such taxable year."

On June 25, 1970, the court issued an opinion concluding that Nolen could not maintain her suit as a class action because she had failed to establish that the class of persons she sought to represent was so numerous that joinder of all members was impracticable and that she would fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). The court further concluded that in the derivative action, Nolen did not fairly and adequately represent the interests of the shareholders similarly situated, and that she therefore could not maintain that action. Fed.R.Civ.P. 23.1.[2] The court then certified that there was no just reason for delay, and entered final judgment upon its orders dismissing the various counts of the complaint. Fed.R.Civ.P. 54(b).[3] Nolen appeals only the dismissal of the derivative action counts of the complaint.

Although the District Court in the sequence of its orders first disposed of the issue of limitation of actions, we observe that affirmance of the dismissal on the basis of Rule 23.1 would obviate resolution of the statute of limitation issue. Accordingly, we first consider whether appellant satisfies the requirement that she will

" * * * fairly and adequately represent the interests of the shareholders * * * in enforcing the right of the corporation * * *." Fed. R. Civ. P. 23.1.

The District Court's conclusion that Nolen did not fairly and adequately represent the interests of the shareholders was based upon two independent grounds:

(1) " * * * that 79 of the 84 stockholders representing 94% of the stockholders and 96% of the outstanding stock have returned to us forms jointly composed by counsel for all parties * * * concluding that plaintiff does not fairly and adequately represent their interests in this litigation";

and

(2) " * * * that the moving force herein was Mr. Lindland * * * that Lindland (and obviously the plaintiff-in-name-only) cannot fairly and adequately represent the interests of the shareholders with the totality of the commitment to shareholder interest required by the litigant carrying the banner for the rights of the corporation."

■ We affirm on the second ground.[4]

2. Rule 23.1 provides:
   In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not

fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

3. Appellant's individual action, to the extent that it is based upon acts committed after September 15, 1964, (which counsel stated at oral argument would not be pursued if the derivative action is not allowed) was not dismissed by the District Court in the orders under review.

4. With regard to the first stated ground, we observe that it is not necessary that derivative action plaintiffs have the support of a majority of the shareholders or even that they be supported by all the minority shareholders. *E. g.*, Shulman v. Ritzenberg, 47 F.R.D. 202, 211 (D.D.C.1969) ; *see* J. Moore, Federal Practice ¶ 23.1.16 [3]; W. Fletcher, Cyclopedia Corpora-

The facts upon which the court based its findings regarding the purpose of the suit and the attitude of appellant are complex. They were presented in detail to the District Court and were thoroughly considered by it. Richard L. Lindland, whom the court found to be in control of the litigation, is the husband of a niece of L. C. Walker, a co-founder of the Company, who served as president and was a director until his death in 1963. Lindland is also the brother-in-law of Thurlo Johnson, who in September 1966, filed a complaint virtually identical to the original complaint in this case.[5] Johnson is the nominee and registered owner of 510 43/45 shares of the Company's stock which are beneficially owned by Lindland's three children.

During the gestation of this dispute, Lindland served as a director of American Seating Company and as an executive officer of Textron. There is substantial evidence of record, which was credited by the District Court, that Lindland's purpose in urging the maintenance of this action was to force Shaw Walker and his father's estate to accede to a merger between the defendant Company and some other company listed on the New York Stock Exchange, preferably American Seating or Textron.[6]

The court also credited the statement of Mr. John P. Carroll, an attorney whose firm represented the Company in proceedings in connection with the assessment of the § 531 penalty tax by the Internal Revenue Service. Carroll stated in an affidavit that he was informed by counsel for plaintiff during a June 1967 meeting that, if a merger could be arranged between the Company and Detroit Steel Corporation, "the plaintiff in this action and those associated with her 'would be satisfied.'"

The court's finding that Lindland controlled the litigation is also supported by the record. Appellant has apparently followed Lindland's lead in several important respects, such as in the selection of counsel. Lindland also served as liaison between Johnson, Nolen, and the other shareholders who supported the

tions (perm. ed.) §§ 5972, 5975, 5994; B. Kaplan, Federal Rules Amendments, 81 Harv.L.Rev. 356, 387 n. 118 (1967); *cf.* Goldstein v. Groesbeck, 142 F.2d 422 (2d Cir. 1944), cert. denied, 323 U.S. 737, 65 S.Ct. 36, 89 L.Ed. 590 (1944). *See also* Carter v. Carter Coal Co., 298 U.S. 238, 286–287, 56 S.Ct. 855, 80 L.Ed. 1160 (1936); Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 318, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (decided under Equity Rule 27); Annot. 154 A.L.R. 1295 (1945). A quantitative requirement would be particularly difficult to apply in this case since it is not clear with reference to the derivative (i. e. the corporation's) cause of action which shareholders should be considered "similarly situated" or which "interests" of the shareholders must be protected. Those who opposed the suit hold approximately 96% of the Company's outstanding shares; but they may be considered in three separate categories: (1) the defendants; (2) employees of the Company; and (3) the principal defendant's two sisters and their children and related trusts. Indeed, although many courts and commentators have uncritically assumed so, it is not clear that "similarly situated" in Rule 23.1 is intended to modify "shareholders,"

since, in relation to their interest in a corporate cause of action, all shareholders other than defendants would presumably be similarly situated. In any event, we need not decide these questions, since we sustain the District Court's determination that appellant is not sufficiently committed to the fair and adequate enforcement of the right of the corporation.

5. The District Court stated that "the Thurlo Johnson litigation was dropped and that of the present plaintiff was instituted in its stead."

6. For example, Mr. William Murray, whose candidacy for the Companys' Board of Directors was supported by Lindland in 1967, stated by affidavit and in his testimony that Lindland had stated to him that he wished to use the instant suit to cause Shaw Walker financial distress and thus force a merger. There is also uncontroverted evidence of record that American Seating considered the suggestion of a merger with defendant Company several times from 1962 to 1966, and that officials of American Seating approached the Company several times with merger suggestions during the pendency of this litigation.

suit and as counsel's source of information for the complaint. As the District Court stated in its June 25, 1970 opinion:

> Mr. Lindland's position in this litigation is clear also, Mrs. Nolen herself, the plaintiff in this action, testified (deposition) that "He (Lindland) has been sort of in charge of things because we were so far away." Mr. Lindland himself speaks of "the shareholders I represent" and the protection of "the interest of our clients."

It follows, therefore, that appellant does not meet the fairness and adequacy of representation requirement of Rule 23.1. Appellant relies upon cases like Johnson v. King-Richardson Co., 36 F.2d 675 (1st Cir. 1930), which held that a shareholder's motive in bringing a derivative action was immaterial to his right to sue in federal court if the corporation had been injured by the wrongful act of an officer and director. However, those cases were not decided under Fed.R.Civ.P. 23.1 which expressly states that the action "may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders * * * in enforcing the right of the corporation * * *." In this case, the District Court found that appellant's primary objective is not the enforcement of the corporation's claim. Under these circumstances, we affirm the District Court's determination that appellant does not meet the requirements of Rule 23.1.

Since appellant cannot maintain the derivative action, we expressly decline to decide the issue of the applicability and construction of the limitation provision of M.C.L.A. § 450.47.[7] We affirm, on the basis of Rule 23.1, the District Court's orders dismissing the derivative counts of the complaint. The other issues raised in this appeal do not require discussion.

Affirmed and remanded for further proceedings.

---

7. We observe that counsel for the parties have cited no case, and our research has revealed none, in which it has been held that the § 47 limitation provision begins to run before the delinquency causes any injury. In Detroit Gray Iron & Steel Founderies, Inc. v. Martin, 362 Mich. 205, 106 N.W.2d 793 (1961), § 47 barred the corporation's action based upon a claim of fraud which injured the corporation at the time of its commission more than six years before the action was brought. The court stated:

> " * * * Plaintiff quite correctly notes that the result is that a corporation *defrauded or otherwise injured* by a director, who owes fiduciary duties to his corporate victim, must sue within 2 years of its discovery of the wrong or within 6 years of its occurrence, whichever sooner occurs, or forever bear the loss." (Emphasis added) Id. at 217–218, 106 N.W.2d at 800.

In this case it is unclear whether the corporation will ultimately be held liable under 26 U.S.C. § 531 et seq. It is not clear whether a cause of action arose at least until the penalty was assessed against the Company, substantially after the directors' failure to declare dividends in the years in question. Section 47 allows derivative actions against directors

> " * * * for the violation of, or failure to perform, the duties above prescribed or any duties prescribed by this act, whereby the corporation *has been or will be* injured or damaged * * *." (Emphasis added.)

Here the corporation has not yet been injured in the manner asserted by appellants and no such injury may occur.

The Michigan Supreme Court observed in *Detroit Gray Iron*, that it is anomalous that a corporation victimized by a director's wrongdoing may be barred from redress if the director succeeds in concealing it for six years, whereas it may sue a stranger who defrauds it within two years of discovery of the wrong regardless of when it occurred. It would be even more anomalous to bar a cause of action which has never arisen. This question has not been decided by the state court and we decline here to anticipate its ruling.