SENTRY SECURITY SYSTEMS, INC. v DETROIT AUTOMOBILE
INTER-INSURANCE EXCHANGE

1. INSURANCE—POLICY—CONSTRUCTION—EXPECTATION OF INSURED.

The extent of coverage under an automobile insurance policy
should be ascertained by a construction of language to favor
the insured in order to provide what the insured would reason-
ably expect.

2. INSURANCE—POLICY—CONSTRUCTION—INDIVIDUAL—CORPORATION—
NAMED INSURED.

The word "individual" in an automobile insurance policy may
include a corporation, and the definition of "named insured"
should not be permitted to exclude coverage of a corporation
which is named in addition to a named individual as an
insured on the face of the policy.

3. INSURANCE—POLICY—CONSTRUCTION—NON-OWNED AUTOMOBILE—
EXCLUSIONS—CORPORATE INSURED.

Insurance coverage is allowed to an insured corporation by the
applicable rules of construction even though the policy contains
an exclusion which would operate when a non-owned automo-
bile is used in a business, where a contrary construction would
allow the exclusion to nullify the non-owned auto protection
provided by the policy whenever a named insured is a corpo-
rate business rather than an individual.

4. INSURANCE—POLICY LANGUAGE—CONSTRUCTION—COURTS—QUES-
TIONS OF FACT—QUESTIONS OF LAW.

Determination of what an insured could reasonably expect the

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 7 Am Jur 2d, Automobile Insurance § 2.

43 Am Jur 2d, Insurance § 274.

[2] 7 Am Jur 2d, Automobile Insurance § 103.

[3] 7 Am Jur 2d, Automobile Insurance § 98.

What is a "non-owned" automobile within the meaning of the
coverage clause of an automobile liability policy. 83 ALR2d 926.

[4] 44 Am Jur 2d, Insurance § 2064.

[5] 20 Am Jur 2d, Costs § 78.

22 Am Jur 2d, Declaratory Judgments § 101.

words of an insurance policy to mean is a question for a court where the underlying facts are undisputed.

5. COSTS—ATTORNEY FEES—DECLARATORY JUDGMENT.
Allowance of attorney fees in a declaratory judgment action is limited to the nominal amount provided by statute or court rule.

Appeal from Oakland, Robert L. Templin, J. Submitted Division 2 June 11, 1974, at Detroit. (Docket No. 19086.) Decided October 9, 1974. Leave to appeal applied for.

Complaint by Sentry Security Systems, Inc., against the Detroit Automobile Inter-Insurance Exchange for a declaratory judgment of liability on an automobile insurance policy. Judgment for plaintiff. Defendant appeals. Affirmed in part, reversed in part, and remanded.

*Poole, Littell & Sutherland* (by *J. Patrick Martin),* for plaintiff.

*Hartman, Beier, Howlett, McConnell & Googasian* (by *Eric J. McCann),* for defendant.

Before: J. H. GILLIS, P. J., and ALLEN and ELLIOTT,* JJ.

### Facts

ELLIOTT, J. Plaintiff, Sentry Security Systems Inc., will be referred to as Sentry. Defendant, Detroit Automobile Inter-Insurance Exchange, is referred to as the Exchange.

The Exchange issued an "Automobile Insurance Policy". The "owned automobile" specified on the declaration certificate was a 1971 Ford private

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

passenger car. The certificate declared the "Name of Insured and Mailing Address":

"Fred Schieman or
Sentry Security Systems or
Royal Oak Leasing Inc
550 N. Woodward, Royal Oak, Michigan"

The Ford was used in the business of Sentry (not an automobile sales or service business). While the Ford was on business use elsewhere, Sentry asked one of its employees, Larry Gray, to drive to Detroit using his own private passenger automobile. Gray is not a relative of Fred Schieman. His trip or errand was for a business purpose of Sentry's. Gray was driving in the course of his employment when his car collided with another car. In the other car was Barry Boudreau who suffered serious bodily injuries and property damage. Boudreau sued Gray and Sentry alleging Gray's negligence and Sentry's vicarious liability. Sentry requested the Exchange to defend Boudreau's suit and to protect Sentry from the liability claimed. The Exchange denied coverage. Sentry then commenced this action against the Exchange for a declaratory judgment. It sought a declaration that the "Automobile Insurance Policy" required the Exchange to defend and to pay any bodily injury or property damages recovered by Boudreau.

## *The Policy*

The "Liability Protection" section of the "Automobile Insurance Policy" contains 2000 words, more or less, in fine print. We have abstracted the pertinent sentences and paragraphs and italicized key language:

"This policy form together with the Declaration Certificate constitutes the complete policy * * *

[The Exchange] does hereby agree with the subscriber named in the Declaration Certificate made a part hereof * * * :

Bodily Injury Liability Coverage

Property Damage Liability Coverage

*To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages* because of:

* * * bodily injury * * * sustained by any person;

* * * property damage,

*arising out* of the ownership, maintenance or *use * * * of the owned automobile or of any non-owned automobile,* and the Exchange shall defend any suit * * * .

"Persons Insured

The following are insureds * * *

(a) with respect to the owned automobile, (1) the named insured and any relative * * *

(b) *with respect to a non-owned automobile* used with the permission of any person having the right to grant it, and providing the automobile described in the Declaration Certificate is a private passenger or utility automobile,

(1) *the named insured, if an individual,* and

(2) any relative * * *

(c) *with respect to any automobile* or trailer, *any other person or organization*

(1) *who is legally responsible* for the use thereof, and

(2) *who,* except with respect to a temporary substitute automobile, *does not own or hire such automobile* or trailer and provided,

(3) *the actual use thereof is by a person who is insured* under (a) or (b) above.

"The insurance afforded * * * applies separately to each insured against whom claim is made or suit is brought, but the inclusion herein of more than one insured shall not operate to increase the limit of the Exchange's liability applicable to this policy.

Definitions

(a) 'named insured' means the person or persons named in * * * the Declaration Certificate, and if an

individual, includes the spouse, if a resident of the same household; provided *with respect to a non-owned automobile,* if two or more named insureds are individuals, *'named insured' means the individual,* and spouse so described, *named first* therein.

\*   \*   \*

Exclusions

This policy does not apply \* \* \*

(g) *to a non-owned automobile while* (1) used in the automobile sales or service business by the insured, or (2) *used* in any other business or occupation *of the insured except a private passenger automobile operated or occupied by the named insured* or operated by his private chauffeur or domestic servant."

Other definitions establish, in the circumstances of this case, Gray's automobile would be a "non-owned automobile" and it would not be a "temporary substitute automobile" or a "replacement automobile".

## *The Proceedings Below*

The Boudreau suit is in the discovery stage. It has been defended, so far, by counsel privately employed by Sentry. The same counsel represented Sentry in the declaratory judgment action.

Upon receipt of the complaint and summons in the declaratory judgment action, the Exchange moved for summary judgment on the pleadings and the policy. It asserted that there was no genuine issue of any material fact.

The judge entered a summary judgment for Sentry as authorized in the last sentence of GCR 1963, 117.3:

"If it appears that the opposing party rather than the moving party is entitled to judgment, the court may render summary judgment in his favor without necessity of a motion therefor."

The judge also awarded Sentry its attorney fees and costs in defending the Boudreau suit and in prosecuting the declaratory judgment action which he found to total $1,500.

The Exchange moved for reconsideration of the summary judgment. That motion was denied. The motion alleged that there were disputed questions of fact. In oral argument on appeal, the Exchange narrowed its claim of disputed facts to a single claim that the intent manifested in the policy is a disputed fact that it is entitled to have resolved by a jury trial.

### Sentry's Theories of Coverage

Sentry presents two theories. It claims the Exchange has a duty to defend and pay damages under one theory or the other. Both theories rely on knowledge of the Exchange that the policy insured a business; in fact, two business corporations, one of them Sentry, were designated as insured on the declaration certificate. The declaration certificate is an integral part of the policy and may have more significance than the fine print, especially if the printed form may have been inappropriate to insure a business corporation. This policy was a contract authored by the Exchange and included the promises to insure Sentry and to pay on behalf of Sentry, within policy limits, what Sentry should become legally obligated to pay as damages arising out of the use of any non-owned automobile and to defend any suit for such damages.

Sentry's first theory is based on subsection (b) under Persons Insured. Correlated to the language of that subsection the claim is:

(1) a non-owned automobile was used with Gray's permission,
(2) Sentry is a named insured,
(3) a corporation can be considered an individual,
(4) coverage is not excluded under exclusion (g) because Gray's car was a private passenger automobile that Sentry operated the only way it could as a corporation, by its employee,
(5) further, "any other business", in exclusion (g), should not include the primary business of an insured corporation for, otherwise, the non-owned automobile protection completely vanishes.

This theory does not discuss the effect of the definition of "named insured" that appears to limit non-owned automobile protection to the first named insured, here Fred Schieman, if more than one individual is named.

Sentry's second theory is based upon subsection (c) of Persons Insured. The claim there is that if Sentry is not one of the persons insured with respect to a non-owned automobile under subsection (b) either because it is not an individual or is not the first named individual who alone is to be considered the named insured, then it must be within "any other person or organization" and it meets all of the requirements of subsection (c), namely:

(1) it is legally responsible for the use of Gray's auto,
(2) it did not own or hire Gray's auto
(3) Gray's auto was actually used by Sentry when Gray, its employee, drove it on Sentry's business.

Exclusion (g), if applicable at all under subsection (c), would be subject to the same exception, discussed above.

### Rules of Construction

A New York case concisely states applicable rules of construction:

"As a general rule, the construction of a written contract of insurance is a matter of law to be determined by the court, but, when the language employed is not free from ambiguity, the intent of the parties becomes a matter of inquiry and the interpretation of the language used is a mixed question of law and fact. A contract is ambiguous when it contains language which may be interpreted more than one way and there is nothing to indicate which meaning is intended or where there is contradictory or necessarily inconsistent language in different portions of the instrument. It has been stated that words cannot be said to be ambiguous unless their signification seems doubtful and uncertain to persons of competent skill and knowledge to understand them and, if from a consideration of the entire contract, the court concludes that the controversial words are only capable of one interpretation, there is no ambiguity. Where the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law and no trial is necessary to determine the legal effect of the contract." (Citations omitted.) *Fadden v Cambridge Mutual Fire Ins Co,* 51 Misc 2d 858; 274 NYS2d 235 (1966).

This is consistent with decisions of the Michigan Supreme Court:

"This Court has held that where the language of a writing is not ambiguous its construction is for the court and, further, that a question of law is presented when the facts are undisputed." *Dykema v Muskegon Piston Ring Co,* 348 Mich 129, 138; 82 NW2d 467 (1957).

It is settled in this state that the extent of coverage under an automobile insurance policy should be ascertained by a construction which favors the insured, to provide what the insured would reasonably expect. *Zurich Insurance Co v Rombough,* 384 Mich 228, 232–233; 180 NW2d 775 (1970), adopted the following California rule:

"In interpreting an insurance policy we apply the

general principle that doubts as to meaning must be resolved against the insurer and that any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.

"These principles of interpretation of insurance contracts have found new and vivid restatement in the doctrine of the adhesion contract. As this court has held, a contract entered into between two parties of unequal bargaining strength, expressed in the language of a standardized contract, written by the more powerful bargainer to meet its own needs, and offered to the weaker party on a 'take it or leave it basis' carries some consequences that extend beyond orthodox implications. Obligations arising from such a contract inure not alone from the consensual transaction but from the relationship of the parties.

"Although courts have long followed the basic precept that they would look to the words of the contract to find the meaning which the parties expected from them, they have also applied the doctrine of the adhesion contract to insurance policies, holding that in view of the disparate bargaining status of the parties we must ascertain that meaning of the contract which the insured would reasonably expect."

*Vermont Mutual Ins Co v Dalzell,* 52 Mich App 686, 691; 218 NW2d 52 (1974), is perhaps the most recent case to put the matter this way:

"It is well settled that where, as here, the contract of insurance is drawn by the insurer, any reasonable doubts or ambiguities will be construed against the insurer and most favorably to the insured."

See also *Sloan v Phoenix of Hartford Ins Co,* 46 Mich App 46; 207 NW2d 434 (1973).

### Conclusions

The word "individual" may include a corporation, *Nelson v US Fire Ins Co,* 259 Cal App 2d 248;

66 Cal Rptr 115 (1968). We think it doubtful that public policy would permit the insurer to define "named insured" so as to exclude coverage, by fine print, to a person named and typed on the declaration certificate. Although, in exclusion (g), "any other business" plainly means any business other than an automobile sales or service business, the applicable rules of construction would allow coverage when a non-owned automobile is used in such other business of the insured corporation if it is a private passenger car operated by the insured corporation by an employee on corporation business. Otherwise, exclusion (g) would always nullify "non-owned auto" protection promised in the policy whenever a named insured is a corporate business such as Sentry.

Moreover, if Sentry is not an "individual" so as to be insured under sub-section (b), or if it is not to be considered a "named insured" because it is not the first named individual then, arguably, Sentry must be some "other person or organization". The alternative theory of Sentry that it is thus covered by sub-section (c) seems compelling. The plain and unambiguous meaning of the words the insurer used in sub-section (c) provides coverage upon the undisputed facts, if Sentry is within the meaning of "other person".

We think it is apparent that the language of the policy was not designed to be used to insure a business, but use this policy to insure a corporate business an agent for the Exchange surely did.

In this circumstance, it would not be helpful to hear testimony from the insurer's lawyers and policy writers as to what they meant. That is not how the "intent" of the policy is to be determined when "intent" is the only disputed fact.

By its motion for summary judgment, the Ex-

change submitted the policy to the court to construe and apply to undisputed facts. The underlying facts are not disputed now. The insurer has never claimed that the extrinsic circumstances surrounding the procurement of the policy must be investigated by a trial. The Exchange just wants a trial to say what it intended by the words it employed with a hope that another judge or jury would not agree with the first judge. What counts is not what the insurer intended its words to mean, but what the premium-paying insured could reasonably expect the words provided to him.

When the underlying facts are undisputed, that is a question for a court. The Exchange presented the question to the assigned judge. Applying rules of construction, he answered the question in favor of the insured. We think his decision concerning coverage should be affirmed.

With respect to attorney fees, we follow *Cooley v Mid-Century Ins Co,* 52 Mich App 612; 218 NW2d 103 (1974). The trial judge believed (with considerable logic, we admit) that full attorney fees should be allowed in this case as well as in the defense of the Boudreau suit. Allowance of attorney fees in this declaratory judgment action is limited by *Cooley* to the nominal amount provided by statute or rule. The award of attorney fees will be set aside for redetermination on remand. Affirmed in part and reversed in part. Remanded for redetermination of attorney fees and costs. No costs on this appeal, neither party having fully prevailed.

All concurred.